**JONES DAY**
Bruce S. Bennett (*pro hac vice*)
555 South Flower Street, 50th Floor
Los Angeles, CA 90071
Telephone:  (213) 489-3939
Facsimile:   (213) 243-2539

Stephen J. Pearson
250 Vesey Street
New York, NY 10281
Telephone:  (212) 326-3939
Facsimile:   (212) 755-7306

- and -

**HOGAN LOVELLS US LLP**
Dennis H. Tracey
Robin Keller
875 Third Avenue
New York, NY 10022
Telephone: (212) 918-3000
Facsimile: (212) 918-3100

Counsel for Parman International B.V.

**JONES DAY**
Victoria Dorfman
51 Louisiana Ave. NW
Washington, DC 20001
Telephone:  (202) 879-3939
Facsimile:   (202) 626-1700

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ------------------------------------------------------- x | **Chapter 15** |
| In re                                                     : | **Case No. 18-12908 (MG)** |
| ENNIA Caribe Holding N.V., et al.,                        : | **(Joint Administration)** |
| Alleged Debtors in a Foreign Proceeding.[1]               : | |
| ------------------------------------------------------- x | |

**NOTICE OF APPEAL**

---

[1] The alleged debtors in the Chapter 15 Cases (as defined below), along with each debtor's trade register number, are: ENNIA Caribe Holding N.V. (trade register number 63986) ("**ECH**"), EC Holding N.V. (trade register number 138313) ("**EC Holding**"), ENNIA Caribe Leven N.V. (trade register number 36875) ("**ECL**"), ENNIA Caribe Zorg N.V. (trade register number 51811) ("**ECZ**"), ENNIA Caribe Schade N.V. (trade register number 63987) ("**ECS**") and EC Investments B.V. (trade register number 99988) ("**ECI**," and, together with ECH, EC Holding, ECL, ECZ and ECS, the "**ENNIA Group**" or "**Debtors**").  The mailing address of the alleged lead debtor in the Chapter 15 Cases, ECH, is John B. Gorsiraweg 6, Willemstad, Curaçao.

Objector-Appellant Parman International B.V., by and through its undersigned counsel, appeals to the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. § 158(a) and Federal Rule of Bankruptcy Procedure 8003, from the Memorandum Opinion and Order Granting Recognition Of A Foreign Main Proceeding (Dkt. No. 73), entered by the United States Bankruptcy Court for the Southern District of New York (Hon. M. Glenn) on December 20, 2018.  A true and correct copy of the Memorandum Opinion and Order Granting Recognition is attached hereto as Exhibit A.

The names of all parties to the Order appealed from and the names, addresses, and telephone numbers of their respective attorneys are as follows:

DAVIS POLK & WARDWELL LLP
*Counsel to the Foreign Representative*
450 Lexington Avenue
New York, NY 10017
Telephone:  (212) 450-4563
By:   Timothy E. Graulich
   James I. McClammy
   Rachelle Navarro
   Adam Shpeen

JONES DAY
*Counsel to Parman International B.V.*
555 South Flower Street, 50th Floor
Los Angeles, CA 90071
Telephone:  (213) 489-3939
By:   Bruce Bennett

- and -

250 Vesey Street
New York, NY 10281
Telephone:  (212) 326-3939
By:   Stephen J. Pearson

- and -

51 Louisiana Ave, NW
Washington, DC 20001
Telephone:  (202) 879-3939
By:   Victoria Dorfman

HOGAN LOVELLS US LLP
*Counsel to Parman International B.V.*
875 Third Avenue
New York, NY 10022
Telephone:  (212) 918-3000
By:   Dennis H. Tracey
   Robin Keller

Dated:  January 2, 2019
      New York, New York

Respectfully submitted,

*/s/ James M. Jones*
**JONES DAY**
James M. Jones
Stephen J. Pearson
250 Vesey Street
New York, NY 10281
Tel:  (212) 326-3939
Fax:  (212) 755-7306
sjpearson@jonesday.com

-and-

Bruce Bennett (*pro hac vice*)
555 South Flower Street, 50th Floor
Los Angeles, CA 90071
Telephone:  (213) 489-3939
Facsimile:   (213) 243-2539
bbennett@jonesday.com

- and -

Victoria Dorfman
51 Louisiana Ave, NW
Washington, DC 20001
Tel: (202) 879-3939
Fax: (202) 626-1700
vdorfman@jonesday.com

*/s/ Robin Keller*
**HOGAN LOVELLS US LLP**
Dennis H. Tracey
Robin Keller
875 Third Avenue
New York, NY 10022
Telephone: (212) 918-3000
Facsimile: (212) 918-3100
dennis.tracey@hoganlovells.com
robin.keller@hoganlovells.com

Counsel for Parman International B.V.

# Exhibit A

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re:

ENNIA Caribe Holding N.V., *et al.*,[1]

Debtors in a Foreign Proceeding.

**FOR PUBLICATION**

Case No. 18-12908 (MG)

---

**MEMORANDUM OPINION AND ORDER GRANTING RECOGNITION OF A**
**FOREIGN MAIN PROCEEDING**

*A P P E A R A N C E S:*

DAVIS POLK & WARDWELL LLP
*Counsel to the Foreign Representative*
450 Lexington Avenue New York, New York 10017
By:     Timothy Graulich, Esq.
        James I. McClammy, Esq.
        Rachelle Navarro, Esq.
        Adam L. Shpeen, Esq.

JONES DAY
*Counsel for Parman International B.V.*
555 South Flower Street, 50th Floor Los Angeles, CA 90071
By:     Bruce S. Bennett, Esq.
        Victoria Dorfman, Esq.
        Stephen J. Pearson, Esq.

HOGAN LOVELLS US LLP
*Counsel for Parman International B.V.*
875 Third Avenue New York, NY 10022
By:     Dennis H. Tracey, Esq.
        Robin Keller, Esq.

---

[1]     The Debtors in this case are ENNIA Caribe Holding N.V. ("ECH"), EC Holding N.V. ("EC Holding"),
ENNIA Caribe Leven N.V. ("ECL"), ENNIA Caribe Zorg N.V. ("ECZ"), ENNIA Caribe Schade N.V. ("ECS") and
EC Investments B.V. ("ECI.").

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

R.M. Hermans, Ph.D., LL.M., M.Sc. ("Hermans" or "Foreign Representative"), filed

chapter 15 petitions and asks the Court to recognize what is essentially an insurance company

rehabilitation proceeding in Curaçao as a "foreign main proceeding" and to recognize him as the

"foreign representative," both as defined in the Bankruptcy Code.  (The "Petitions," ECF Doc. #

4.)

Hermans filed the Petitions on behalf of ENNIA Caribe Holding N.V. ("ENNIA"), the

largest insurance company in Curaçao.[2]  ENNIA consists of three Curaçao-based insurance

companies ("Insurer Debtors")[3] and three of their unregulated affiliates ("Asset Manager

Debtors,"[4] collectively with the Insurer Debtors, the "Foreign Debtors").  All the Foreign

Debtors are directly or indirectly owned by non-debtor Parman International B.V. ("Parman").

Parman filed an objection to the motion for recognition.  (The "Objection," ECF Doc. # 24.)  The

Central Bank of Curaçao and St. Maarten ("CBCS") regulates Curaçao insurance companies,

including the Insurer Debtors.

The genesis of the dispute between the parties—which has been building over the last

two or more years—is the liquidity levels of the Insurer Debtors.  In July of 2018, the CBCS'

solvency concerns grew so great that they revoked the insurers' licenses and initiated a procedure

---

[2]     While insurance companies—including foreign insurance companies—are not eligible to be debtors in cases under chapters 7 or 11, they may be foreign debtors in chapter 15 cases.  *See Fogerty v. Petroquest Resources, Inc. (In re Condor Ins. Ltd.)*, 601 F.3d 319, 321 (5th Cir. 2010).  Insurance company insolvency and rehabilitation proceedings in the U.S. are specifically exempted from the provisions of the Bankruptcy Code by section 109(b).  Indeed, most insurance company regulation is exempted from federal law.  *See* McCarran-Ferguson Act, 15 U.S.C. § 1011, *et seq.*

[3]     The Insurer Debtors are the entities known as ECL, ECS, and ECZ.  (Declaration of R.M. Hermans, ECF Doc. # 5 (the "Foreign Representative Declaration"), ¶ 12.)

[4]     The Asset Manager Debtors include EC Holding, ECH, and ECI.  (Foreign Representative Declaration ¶ 12.)

2

to rehabilitate the companies under a statute known as the LTV, which authorizes a court upon the application of the CBCS to pronounce "Emergency Regulations." Upon receiving approval from a Curaçao court to implement the Emergency Regulations, the CBCS replaced most of the Insurer Debtors' management, effectively removing Parman's control. The CBCS is now in control of the Insurer Debtors' continued operation during the pendency of the rehabilitation proceeding, which will hopefully avoid liquidation. The CBCS appointed the Foreign Representative and supports recognition.

The CBCS authorized the Foreign Representative to file chapter 15 petitions on behalf of the Foreign Debtors because, allegedly, over $240 million of the Foreign Debtors' assets are held in accounts at Merrill Lynch in New York. Some of this money is in accounts in the names of the Insurer Debtors and some is in accounts in the names of the Asset Manager Debtors. The Foreign Representative wants the funds at Merrill Lynch returned to Curaçao to help the Insurer Debtors satisfy policyholder claims. Parman wants to block the return of the funds, or at least the portion of these funds that are in the accounts of the Asset Manager Debtors.[5] Parman also is attempting to use the proceeding in this Court—improperly, in the Court's view—as an opportunity to relitigate issues of Curaçao law that it has so far lost in Curaçao, although various judicial proceedings remain pending in Curaçao.

The principal issue before this Court is whether the Curaçao insurance company rehabilitation proceeding is a "foreign proceeding" under chapter 15 of the Bankruptcy Code. A

---

[5] At the recognition hearing on December 12, 2018, the Foreign Representative and Parman reached an agreement to permit $103 million held in accounts at Merrill Lynch in the names of the Insurer Debtors to be returned to Curaçao. The agreement was supposed to be documented and entered in the days following the hearing. The Insurer Debtors need the money to remain current in making pension payments in Curaçao. For reasons that are unclear to the Court, negotiations of a consent order broke down. As a result, the Court has completed this Opinion recognizing the Curaçao proceeding as a foreign main proceeding. The Foreign Representative may now move for discretionary relief under section 1521 seeking an order directing the transfer of funds on deposit in Merrill Lynch in New York to the Foreign Debtors in Curaçao under section 1521(b).

"foreign proceeding" is "a collective judicial or administrative proceeding in a foreign country,
including an interim proceeding, under a law relating to insolvency or adjustment of debt in
which proceeding the assets and affairs of the debtor are subject to control or supervision by a
foreign court, for the purpose of reorganization or liquidation." 11 U.S.C. § 101(23). Parman
argues that the Curaçao proceeding is not a "collective proceeding," and that it is not a
proceeding in which "the assets and affairs of the debtor are subject to control or supervision by
a foreign court . . . ." Parman also argues that even if the Curaçao proceeding would satisfy the
requirements to be a "foreign proceeding," this Court should nevertheless refuse to recognize the
Curaçao proceeding because, in Parman's view, it is "manifestly contrary to the public policy of
the United States," 11 U.S.C. § 1506, because the Curaçao statutory procedure violates due
process.

For the reasons explained below, Parman's Objection to recognition is overruled, the
Curaçao proceeding is recognized as a foreign main proceeding, and Hermans is recognized as
the Foreign Representative.

## I.  <u>BACKGROUND</u>

### A.  **The Foreign Debtors**

The Foreign Debtors are part of ENNIA. ENNIA is the largest insurance company in
Curaçao and St. Maarten. (Foreign Representative Declaration ¶ 7.) ENNIA is considered to be
systemically important to Curaçao and St. Maarten. (*Id.* ¶ 8.) ENNIA's total assets constitute
approximately 50% of the total assets of the insurance sector of Curaçao and St. Maarten. (*Id.*)
ENNIA's total assets are estimated to be greater than 50% of annual revenue of the government
of Curaçao and St. Maarten, and approximately 25% of the annual gross domestic product of

Curaçao and St. Maarten.  (*Id.*)  Furthermore, ENNIA is, to a large extent, responsible for the provision of pensions in Curaçao.  (*Id.* ¶ 8.)

ENNIA's corporate structure includes at least two types of entities: Insurer Debtors and Asset Manager Debtors.  The Insurer Debtors provide insurance products and are subject to the regulatory authority of the CBCS.  (*Id.* ¶ 6.)  The Insurer Debtors have invested most of their assets with the Asset Manager Debtors.  (*Id.* ¶ 12.)

**B.      Relevant Curaçao Law**[6]

Curaçao is a constituent country of the Kingdom of the Netherlands.  (Declaration of Professor Arthur Hartkamp, ECF Doc. # 51, Ex. B-4 (the "Hartkamp Declaration"), ¶ 22.)  The codes of Curaçao and the Netherlands share the same origins, contain a large number of almost identical articles, and have been developed in largely the same manner.  (*Id.* ¶ 25.)  The Supreme Court of the Netherlands is the highest court of the Kingdom of the Netherlands.  (*Id.* ¶ 26.)  The insolvency landscape in the Netherlands and Curaçao is significantly similar.  (*Id.* ¶ 30.)

The Curaçaoan insolvency code, the *Faillissementsbesluit 1931* (which means "Bankruptcy Decree 1931"), contains the following two insolvency proceedings: the *faillissement* (which means "bankruptcy") and *surseance van betaling* (which means "suspension of payments").  (*Id.*)  The Curaçaoan insolvency code allows for insurance companies to declare bankruptcy, but it does not permit insurance companies to initiate suspension of payment proceedings.  (*Id.* ¶ 31.)  Instead, insurance companies may be restructured only through a

---

[6]      This Opinion includes the Court's determinations regarding the law of Curaçao and the Netherlands to the extent necessary.  The Court's determinations of Curaçao and Netherlands law are rulings on questions of law, not fact.  F. R. CIV. P. 44.1 ("A party who intends to raise an issue about a foreign country's law must give notice by a pleading or other writing.  In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence.  The court's determination must be treated as a ruling on a question of law.").  The parties submitted declarations of experts on the law of Curaçao and the Netherlands.  The experts provided English language translations of relevant statutes and case law.  The experts disagreed on some legal issues.  The Court concludes that the law of Curaçao and the Netherlands is as stated in the Declaration of Professor Arthur Hartkamp.

special insolvency proceeding known as the *noodregeling* ("which means, "emergency

regulation" ("Emergency Regulations"). (*Id*.) Authorization for the Emergency Regulations is

codified in the "Landsverordening Toezicht Verzekeringsbedrijf" (which means "National

Ordinance on the Supervision of the Insurance Industry") ("LTV"). (Declaration of Sabine

Altena, ECF Doc. # 6, ¶ 1.)

The CBCS is responsible for supervising insurance companies operating in Curaçao and

St. Maarten. (Foreign Representative Declaration ¶ 6.) The CBCS has the power to revoke an

insurer's license to practice insurance without court approval. If the CBCS revokes an insurer's

license, it may petition a Curaçao court to pronounce Emergency Regulations against an

insurance company supervised by the CBCS. LTV Art. 60(1).[7] When a petition for Emergency

Regulations is filed, a Curaçao court must hold a public hearing to decide whether to approve the

Emergency Regulations "with the utmost urgency." LTV Art. 60(4). Both the CBCS and the

insurer must be heard. LTV Art. 60(6). Following the hearing, the Curaçao court may

pronounce the Emergency Regulations if "the interest of the joint creditors of [the] insurer . . .

requires a special measure." LTV Art. 60(1).

If the Curaçao Court orders the Emergency Regulations, the LTV authorizes the CBCS to

"(a) liquidate all or part of the insurer's portfolio; (b) transfer all or part of the rights and

liabilities resulting from or pursuant to any insurance contracts; or (c) restructure the business of

the insurer." LTV Art. 60(2). The LTV directs the CBCS to "exercise, exclusively, all powers

of the directors, the members of the supervisory board or the representative of the insurer," and

to "look after the interests of the joint creditors." LTV Art. 63(1) and (2). The LTV also permits

the CBCS to "authorize the board of directors or the representative of the insurer to perform

---

[7]     A translation of the LTV may be found at ECF Doc. # 6, Ex. A.

specific acts" and to "dismiss members of the board of directors, members of the supervisory board or the representative on behalf of the insurer." LTV Art. 63(4) and (5). Furthermore, any decisions by the insurer's shareholders or members require the approval of the CBCS. LTV Art. 63(6).

While the Emergency Regulations are in effect, and with certain exceptions, "the insurer cannot be forced to pay its debts that arose before the pronouncement, nor to pay its debts that arise after the pronouncement." LTV Art. 65(1).[8] The Emergency Regulations allow the CBCS to modify insurance contracts in certain circumstances, though only after receiving court approval. LTV Art. 67(1). The CBCS also needs court approval to compensate professionals hired to exercise the CBCS' powers under the LTV. LTV Art. 63(8).

If the CBCS successfully restructures the insurer, it may request that the court withdraw the Emergency Regulations. LTV Art. 61(3). If it becomes apparent that the insurer's equity capital is negative and the objectives pursued under the Emergency Regulations cannot be achieved, the CBCS must request bankruptcy on behalf of the insurer. LTV Art. 71(1). That essentially means that the debtor will be liquidated.

C.       The Proceeding in Curaçao

Between 2015 and 2018, the CBCS and ENNIA had ongoing discussions to restructure ENNIA to comply with Curaçao solvency requirements. (Declaration of Abdallah Andraous, ECF Doc. # 24-4, "Andraous Declaration," ¶ 6-8.) As of July 2018, the CBCS and ENNIA were unable to resolve these issues. (Foreign Representative Declaration ¶ 17.)

---

[8]       While there was some dispute about the meaning of this section during the recognition hearing, the plain language of this section appears to mandate the effect of a moratorium (equivalent to our automatic stay).

On July 3, 2018, the CBCS revoked the Insurer Debtors' insurance license[9] and filed an order seeking application of the Emergency Regulations to the Insurer Debtors. (Andraous Declaration ¶ 10.) Upon receipt of the application, the Court of First Instance of Curaçao ("Curaçao Court") scheduled a hearing for 10:00 A.M., July 4, 2018. (*Id.* ¶ 15.) The Foreign Debtors were given notice of the scheduled hearing, but at 10:30 A.M., the Foreign Debtors received notice that the Emergency Regulations hearing had been moved to 2:15 P.M. (Objection, at 10.) The Curaçao court "pronounce[d]" the Emergency Regulations with respect to the Insurer Debtors and Asset Manager Debtors ECH and ECI at the hearing. ("Curaçao Court Opinion," ECF Doc. # 5, at 24.) The Curaçao court extended the Emergency Regulations to EC Holding, the remaining Asset Manager Debtor, two days later. (Andrauous Declaration ¶ 19.)

Under the authority granted by the Curaçao court, the CBCS removed all but one of the Insurer Debtors' board members and delegated management of the Insurer Debtors' day-to-day affairs to new management under a "limited scope proxy." (Foreign Representative Declaration ¶ 23.) The Foreign Representative claims that the CBCS "has assumed control of the operations of the Debtors and is using such authority to recover assets of the Debtor and restructure the debts of the Debtors in a manner that is in the interest of the collective creditors of each Debtor." (*Id.*)

On September 25, 2018, the CBCS appointed R.M. Hermans as the foreign representative of each of the Foreign Debtors to commence these chapter 15 cases. (Foreign Representative

---

[9]     The Insurer Debtors filed an administrative objection with the CBCS protesting the revocation of the insurance licenses the same day. (Andraous Declaration ¶ 10.) Once the CBCS took control of the Debtors, the CBCS caused the Debtors to withdraw their appeal of the license revocation. (Objection, at 13.) On August 13, 2018, Parman filed a notice of appeal in the Curaçao court seeking annulment of the order revoking the insurance licenses. (Declaration of Bouke Boersma, ECF Doc. # 24-5, ¶ 44.) The appeal remains pending.

Declaration ¶ 4.)  The Foreign Representative filed the Petitions the same day.  The Petitions ask the Court to (1) recognize the rehabilitation proceeding commenced by the Curaçao court (the "Proceeding") as a foreign main proceeding, and (2) recognize R.M. Hermans as the foreign representative.

## II.    DISCUSSION

Parman argues that recognition should be denied because (A) the Proceeding does not meet the definition of a foreign proceeding, and (B) recognition of the Proceeding would be manifestly contrary to the public policy of the United States.  The Court is not persuaded by either argument.  Accordingly, the Objection is overruled and the Petitions are **GRANTED**.

### A.  Whether the Proceeding is a Foreign Proceeding

Parman argues that the Proceeding cannot be recognized as a foreign main proceeding. The Bankruptcy Code provides that, after notice and hearing, a court shall enter an order recognizing a foreign proceeding as a foreign main proceeding if (1) such foreign proceeding is a foreign main proceeding within the meaning of section 1502 of the Bankruptcy Code, (2) the foreign representative applying for recognition is a person or body, and (3) the petition meets the requirements of section 1515 of the Bankruptcy Code.  *See* 11 U.S.C. § 1517(a).  The Code defines a foreign main proceeding as "a foreign proceeding pending in the country where the debtor has the center of its main interests."  11 U.S.C. § 1502(4).[10]  Section 101(23) of the Bankruptcy Code defines a "foreign proceeding" as:

> a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

---

[10]      It is unchallenged that each of the Foreign Debtors has its center of main interests in Curaçao.

9

11 U.S.C. § 101(23). Courts applying section 101(23) look for:

> (i)   [the existence of] a proceeding;
> (ii)  that is either judicial or administrative;
> (iii) that is collective in nature;
> (iv)  that is in a foreign country;
> (v)   that is authorized or conducted under a law related to insolvency or the adjustment of debts;
> (vi)  in which the debtor's assets and affairs are subject to the control or supervision of a foreign court; and
> (vii) which proceeding is for the purpose of reorganization or liquidation.

*In re Ashapura Minechem Ltd.*, 480 B.R. 129, 136 (S.D.N.Y. 2012).

Parman argues that the Proceeding does not meet the statutory definition of a foreign proceeding because the Proceeding is not "collective in nature" and because the seized assets in this case are not "subject to control or supervision by a foreign court." (Objection, at 23-24 (quoting 11 U.S.C. § 101(23)).) Neither argument is persuasive.

When determining whether a proceeding is "collective in nature," the primary question is whether the proceeding considers the rights and obligations of all creditors. *Ashapura*, 480 B.R. at 140 ("The main test of whether a proceeding is collective is whether *all* creditors' interests were considered in the proceeding."); 8 COLLIER ON BANKRUPTCY ¶ 1501.03 (16th ed. 2018) ("The 'collective proceeding' requirement is intended to limit access to chapter 15 to proceedings that benefit creditors generally and to exclude proceedings that are for the benefit of a single creditor."); *In re ABC Learning Centres Ltd.*, 445 B.R. 318, 328 (Bankr. D. Del. 2010), *aff'd*, 728 F.3d 301 (3d Cir. 2013) (citing *In re Betcorp Ltd.*, 400 B.R. 266, 281 (Bankr. D. Nev. 2009)) ("A proceeding is collective if it considers the rights and obligations of all creditors.").

The plain language of the LTV establishes that rehabilitation proceedings pursuant to the Emergency Regulations are collective in nature. First, Emergency Regulations may only be pronounced if a Curaçao court finds that doing so would be in "the interest of the joint creditors."

10

LTV Art. 60(1); (Hartkamp Declaration ¶ 38.) In fact, this is the only factor that the LTV instructs Curaçao courts to consider. *See* LTV Art. 60(1). Second, the LTV explicitly mandates that the CBCS must "look after the interests of the joint creditors" while the Emergency Regulations are in place. *See* LTV Art. 63(2); (Hartkamp Declaration ¶ 39.). Third, the LTV permits the CBCS to adopt a resolution, even if the resolution requires the approval of the company's shareholders or members and the shareholders or members do not approve it. *See* LTV Art. 63(7). The Explanatory Memorandum to the LTV explains that this provision ensures that the CBCS can perform its tasks in the interests of the joint creditors. (Hartkamp Declaration ¶ 40.) Finally, the LTV prohibits the CBCS from transferring a portion of the insurer's assets and liabilities if the transaction would prejudice the creditors whose liabilities remain. *See* LTV Art. 68 ("Any transfer of rights and obligations pursuant to this chapter shall not prejudice the rights of the remaining creditors."); (Hartkamp Declaration ¶ 41).

Parman argues that the Proceeding is not collective in nature because it does not provide creditors with the right to participate. (Objection, at 14.) The Foreign Representative disputes whether creditors have a right to participate in the Proceeding. ("Foreign Representative's Supplemental Brief," ECF Doc. # 50, ¶¶ 24-26.) Even if Parman is correct that the Proceeding does not allow creditors to participate, this does not prevent the Court from finding that the Proceeding is collective in nature. *See Ashapura*, 480 B.R. at 141 (quoting Judge Peck, who stated at a hearing, "even if there were no opportunity by practice and custom for unsecured creditors to participate, I think this may still be a collective proceeding, because it involves parties other than just one class of creditor or just party-in-interest."). Accordingly, considering the plain language of the LTV, the Court finds that the Proceeding is collective in nature.

Parman also argues that the Proceeding does not meet the definition of a foreign proceeding because the Foreign Debtors' assets are not "subject to control or supervision by a foreign court," as required by 11 U.S.C. § 101(23). This argument fails as well, as either the Curaçao court or the CBCS qualifies as a "foreign court" with control or supervision over the Foreign Debtors' assets.

The Bankruptcy Code defines "foreign court" as "a judicial or other authority competent to control or supervise a foreign proceeding." 11 U.S.C. § 1502(3); *see also The Guide to Enactment and Interpretation of the UNCITRAL Model Law on Cross-Border Insolvency* ¶ 87 ("A foreign proceeding . . . should receive the same treatment irrespective of whether it has been commenced and supervised by a judicial body or an administrative body. Therefore, in order to obviate the need to refer to a foreign non-judicial authority whenever reference is made to a foreign court, the definition of "foreign court" in subparagraph (e) includes also non-judicial authorities."). The CBCS, as a national regulatory authority tasked with oversight of the insurance industry, clearly qualifies as an authority competent to control or supervise a foreign proceeding. Furthermore, the Emergency Regulations grant the CBCS essentially complete control over the Foreign Debtors' assets. *See, e.g.*, LTV Art. 63(1) ("If the Court pronounces the emergency regulations, the [CBCS] shall exercise, exclusively, all powers of the diretors, the members of the supervisory board or the representative of the insurer."). Thus, this element of the definition of "foreign proceeding" is satisfied by the CBCS' control over the Foreign Debtors' assets. *See In re Tradex Swiss AG*, 384 B.R. 34, 42 (Bankr. D. Mass. 2008) ("Even if the decree of the [Swiss Federal Banking Commission] were not subject to appeal to the Swiss Federal Administrative Court, and then the Swiss Federal Supreme Court, the [Swiss Federal

Banking Commission] itself comes within the definition of a foreign court. Thus the SFBC proceeding is a foreign proceeding . . . .").[11]

The Curaçao court also qualifies as a foreign court because the Foreign Debtors' assets are subject to its supervision. Curaçao court approval is required to initiate Emergency Regulations. *See* LTV Art. 60(1); (Hartkamp Declaration ¶ 44.). And Curaçao court approval is required to terminate Emergency Regulations. (*See* Hartkamp Declaration ¶ 48-49 (citing LTV Art. 61(3) and 71(1)).) During the pendency of the Emergency Regulations, the CBCS needs the approval of a Curaçao court to (a) modify an insurance contract, in the event of a transfer of the rights and obligations under or pursuant to that contract, and (b) reduce the duration of insurance contracts. (*See* Hartkamp Declaration ¶ 46 (citing LTV Art. 67(1)).) The CBCS also needs the approval of a Curaçao court to compensate professionals hired to exercise the CBCS' powers under the LTV. (*See* Hartkamp Declaration ¶ 45 (citing LTV Art. 63(8)).) Thus, this element of the definition of foreign proceeding is met. *See In re Betcorp Ltd.*, 400 B.R. at 283–84 (holding that section 101(23) was satisfied by either the supervision and control of the Australian Securities and Investment Commission—a regulatory agency—or by the oversight of the "more traditional judicial authority" of the Australian courts).

### B. Whether the Public Policy Exception Applies

Parman argues that the Court should not recognize the Proceeding because ENNIA did not receive adequate notice of the hearing on July 4, 2018. Parman contends that this renders the

---

[11]    At the recognition hearing, Parman's counsel argued that the CBCS could not be the "foreign court" because, under the Emergency Regulations, the CBCS has essentially taken over the Foreign Debtors. Parman's counsel believes that this means that CBCS cannot be the "foreign court" because that would be akin to saying that the CBCS is supervising itself. This argument misconstrues the law, however. The statutory definition of a foreign proceeding requires that "the assets and affairs of the debtor are subject to control or supervision by a foreign court." 11 U.S.C. § 101(23) (emphasis added). Thus, the requirements of the statute are met so long as the CBCS controls the assets and affairs of the Foreign Debtor, even if it cannot be said that the CBCS does not also supervise the assets and affairs of the Foreign Debtor.

Proceeding "manifestly contrary to the public policy of the United States."  (Objection, at 14.)
The Court disagrees.

Section 1506 of the Bankruptcy Code states that "[n]othing in this chapter prevents the
court from refusing to take an action governed by this chapter if the action would be manifestly
contrary to the public policy of the United States."  11 U.S.C. § 1506.  Courts interpret this
exception as a narrow one that should be applied sparingly.  *In re Toft*, 453 B.R. 186, 193
(Bankr. S.D.N.Y. 2011).  The key determination is whether the procedures used in the foreign
court "meet our fundamental standards of fairness . . . ." *Id.* at 194 (quoting *Metcalfe &
Mansfield Alt. Invs.*, 421 B.R. 685 (Bankr. S.D.N.Y. 2010)).  Far from manifestly contrary to
public policy, Curaçao's regulation of insurance companies, and its statutory authority for
insurance company rehabilitation procedures, are largely consistent with the approaches to such
issues utilized in this country and in most countries around the world, with variations reflecting
local approaches to administrative and judicial allocation of authority.[12]

Parman argues that the Proceeding is manifestly contrary to the public policy of the
United States because ENNIA did not receive sufficient notice of the Proceeding.  The parties
dispute precisely how much notice ENNIA received.  Parman states that ENNIA received notice
of the hearing less than four hours in advance.  (*See* "October 31 Hearing Transcript," ECF Doc.
# 49-10, 30:5-10; *see also* Objection, at 18.)  The Foreign Representative claims that ENNIA
received notice one day in advance and notes that the hearing came after years of discussion
between ENNIA and the CBCS.  (Foreign Representative's Supplemental Brief ¶ 9.)  Even if the

---

[12]    Parman's attack on the Curaçao statutory authority for insurance company rehabilitation as manifestly
contrary to U.S. public policy, if accepted, would effectively block many foreign insurance regulators operating
under similar statutes from enforcing their regulatory authority when they seek to recover U.S. dollar denominated
investments of foreign insurance companies that are customarily held in the U.S., as is the case of the Foreign
Debtors.

Court accepts Parman's version of the facts, the Court does not find that the amount of notice given would violate due process, let alone be manifestly contrary to the public policy of the United States. *See In re Cozumel Caribe, S.A. de CV*, 482 B.R. 96, 116 (Bankr. S.D.N.Y. 2012) ("Due process is not violated by the entry of *ex parte* orders, provided that notice and an opportunity to appear and defend are promptly given.").

"[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). The amount and type of due process necessary for a particular situation depends on the "precise nature of the government function involved as well as of the private interest that has been affected by governmental action." *Id.* (quoting *Cafeteria & Restaurant Workers Union v. McElroy*, 367 U.S. 886, 895 (1961). The Curaçao legislature determined that applications for Emergency Regulations should be handled with the utmost urgency. LTV Art. 60(4); (Hartkamp Declaration ¶ 67). Thus, the LTV instructs Curaçao courts, upon receipt of an application for Emergency Regulations, to "hold a public hearing . . . with the utmost urgency." *Id.* The Curaçao legislature balances the desire to handle applications for Emergency Regulations quickly with the desire to protect the rights of interested parties by requiring Curaçao courts to hear from both the insurer and the CBCS before issuing a ruling. LTV Art. 60(6). The Curaçao court in this case appears to have followed the instructions of its legislature. The Curaçao court received an application for Emergency Regulations on July 3, 2018, initially scheduled a hearing on the matter for July 4, 2018 at 10:00 A.M., and then moved the hearing time to 2:15 P.M. The Curaçao court did not issue a ruling until hearing from counsel for both the insurers and the CBCS.

This Court may not second guess the decision of the Curaçao legislature or the Curaçao court. To do so would be particularly inappropriate here, considering our States afford insurance

15

companies with a similar amount of due process notice in insolvency proceedings.  In the United

States, the laws of several jurisdictions allow a regulator to seize an insurance company based on

an order obtained *ex parte*.  *See, e.g.*, 18 Del. C. § 5943 (Upon a petition from the state insurance

commissioner, "the Court may issue forthwith, *ex parte* and without a hearing, the requested

order which shall direct the Commissioner to take possession and control of all or a part of the

property" of the insurer); Ohio Rev. Code § 3903.10 (substantially the same); 40 Pa. Stat. Ann. §

221.12 (substantially the same); Wis. Stat. § 645.22 (substantially the same); Tex. Ins. Code

Ann. § 443.051 (substantially the same).  U.S. courts often grant temporary restraining orders

and injunctions on four hours' notice (or less), if circumstances dictate.  Providing four hours'

notice is not manifestly contrary to the public policy of the United States when even less notice

is permitted in state and federal courts in the United States.

Moreover, any due process concerns raised by notice afforded to ENNIA are obviated by

the fact, as explained by the Foreign Representative's experts on Curaçao and the Netherlands

law, that Curaçao law offers a variety of legal procedures that permitted Parman to challenge the

implementation of Emergency Regulations.  While the LTV does not permit a direct appeal of

the order pronouncing Emergency Regulations,[13] Dutch law and Curaçao law appear to provide

procedures for challenging administrative or judicial determinations in certain situations even

where statutes prohibit direct appeals.  For instance, Dutch law permits appeals where the lower

court has breached fundamental principles of law, such as the principle of due process.

(Harkamp Declaration ¶ 74.)  The Supreme Court of the Netherlands (the highest court that can

---

[13]    The LTV states "No appeal shall be possible against the decision, save an appeal in cassation in the interest
of the law."  LTV Art. 60(9).  An appeal in cassation in the interest of the law may only be pursued by the
procureaur-Generaal to the Supreme Court, and such an appeal would not affect the validity of the lower court's
ruling.  (Hartkamp Declaration ¶ 73.)  It would only provide guidance to lower courts on the subject matter.  (*Id.*)

review decisions of the courts in Curaçao) also allows appeals if the lower court has misjudged the scope of a statute.  (*Id.*)

Parman also argues that recognition is inappropriate on foreign policy grounds because the "Curaçao Court lacked statutory authority over the non-regulated entities."  ("Supplemental Objection," ECF Doc. # 49, at 15.)  Parman made and lost this argument in the court in Curaçao. Therefore, this argument amounts to no more than an improper request for another bite of the apple.  *SNP Boat Serv. S.A. v. Hotel Le St. James (In re SNP Boat Serv. S.A.)*, 483 B.R. 776, 786 (S.D. Fla. 2011) ("To inquire into a specific foreign proceeding is not only inefficient and a waste of judicial resources, but more importantly, necessarily undermines the equitable and orderly distribution of a debtor's property by transforming a domestic court into a foreign appellate court where the creditors are always provided the proverbial 'second bite at the apple.'").  The Court concludes that Parman's argument is also an inaccurate statement of the law of Curaçao and the Netherlands.  In appropriate circumstances courts in those countries may extend emergency regulations to unregulated affiliates of insurance companies.  (Hartkamp Declaration ¶ 69–70.)  The court in Curaçao determined that the Emergency Regulations should be extended to the Insurer Debtors' unregulated affiliates.  It is not the role of a bankruptcy court in a chapter 15 case to second guess the decisions of the Curaçao court.

### III.    <u>CONCLUSION</u>

For the reasons explained above, the Proceeding is recognized as foreign main

proceeding, as defined in section 1502(4), and the Foreign Representative is recognized as the

"foreign representative," as defined in section 101(24) of the Bankruptcy Code.

**IT IS SO ORDERED.**

Dated:    December 20, 2018
          New York, New York

                          _____*Martin Glenn*_____
                          MARTIN GLENN
                          United States Bankruptcy Judge